| Melendez v New York City Tr. Auth. |
| --- |
| 2025 NY Slip Op 31021(U) |
| March 25, 2025 |
| Supreme Court, New York County |
| Docket Number: Index No. 450521/2022 |
| Judge: Richard Tsai |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:     HON. RICHARD TSAI                         PART                     21

                                        *Justice*

-----------------------------------------------------------------------------X

JASON L. MELENDEZ,                                    INDEX NO.         450521/2022

                              Plaintiff,             MOTION DATE       08/19/2024

                - v -                                MOTION SEQ. NO.      001

NEW YORK CITY TRANSIT AUTHORITY and NIKITA K N
WINFIELD,                                            **DECISION + ORDER ON
                                                          MOTION**
                              Defendants.

-----------------------------------------------------------------------------X

The following e-filed documents, listed by NYSCEF document numbers (Motion 001) 1, 27- 44

were read on this motion to/for            JUDGMENT - SUMMARY            .

Upon the foregoing documents, it is **ORDERED** that plaintiff's motion for partial summary judgment as to liability against defendants is **GRANTED**; and it is further

**ORDERED** that the first affirmative defense of plaintiff's culpable conduct and third affirmative defense of emergency doctrine are stricken; and it is further

**ORDERED** that the parties are directed to appear in person for a previously scheduled status conference on **July 31, 2025** at **11:30 a.m.** in IAS Part 21, 80 Centre Street Room 280, New York, New York.

In this action, plaintiff asserts that, on September 11, 2020 at around 11:30 a.m., he was operating a box truck that was stopped at a red traffic light at the intersection of East 78th Street and Madison Avenue (plaintiff's exhibit C [NYSCEF Doc. No. 33], bill of particulars ¶¶ 3-4; plaintiff's exhibit D [NYSCEF Doc. No. 34], statutory hearing tr at 27, line 13 through 28, line 19).  Plaintiff stated that after the light turned green, "there was a bit of traffic in front of me so I couldn't move" but then "I'm slowly creeping into the intersection into another street in front of me. That's when the traffic just slowly opened", and at that point he was rear-ended from behind by defendant New York City Transit Authority's bus operated by defendant Nikita K N Winfield (statutory hearing tr at 27, line 13 through 28, line 19).[1]

_____

[1] Contrary to defendants' argument, plaintiff statutory hearing transcript is unsworn/"non-sworn to" (affirmation in opposition to motion [NYSCEF Doc. No. 39] ¶¶ 18, 22). Plaintiff's testimony was given under oath (*see* statutory hearing tr at 3, lines 15-18), and the transcript was certified by a stenographer (*see id.* at 40-41).   Given that the New York City Transit Authority attended the statutory hearing, the transcript may be considered on plaintiff's motion for summary

450521/2022   MELENDEZ, JASON L. vs. NEW YORK CITY TRANSIT AUTHORITY ET AL          Page 1 of 5
Motion No.  001

[* 1]

In their answer, defendants admitted that, on September 11, 2020, defendant York City Transit Authority (NYCTA) owned the subject bus and that defendant Nikita K N Winfield (Winfield) was operating the bus with NYCTA's "express or implied knowledge, consent and/or permission" (*compare* complaint [NYSCEF Doc. No. 1] ¶¶ 25-26, 31-32 *with* answer [NYSCEF Doc. No. 1] ¶ 4).

Plaintiff has met the prima facie burden of establishing defendants' negligence and that defendants' negligence was a substantial factor in causing his injuries.

> "It is well settled that a rear-end collision with a stopped or stopping vehicle establishes a prima facie case of negligence on the part of the driver of the rear vehicle and imposes a duty on the part of the operator of the moving vehicle to come forward with an adequate nonnegligent explanation for the collision" (*Madera v Charles Hukrston Truck, Inc.*, 235 AD3d 452 [1st Dept Feb. 11, 2025] [internal quotation marks omitted]).

In her affidavit in opposition, Winfield asserts that at the time of accident she was in "medium traffic" and "traveling northbound on Madison Avenue" and had "maintained a safe distance from the box truck directly in front of the bus that I was driving" (Winfield affidavit in opposition to motion [NYSCEF Doc. No. 40] ¶¶ 5-6). Winfield further asserts that after "the light turned green, the box truck began to move forward before abruptly stopping short" and that "[b]ecause the light was green, the intersection was clear, and the traffic had subsided, there was no observable reason for the abrupt stop by that box truck" (*id.* ¶¶ 12, 14). Winfield asserts that "[a]s a result of this unanticipated and unexplained stop, the bus made contact with the rear of the box truck" (*id.* ¶ 16).

Winfield's statement that the light was green and that the intersection was clear could be read to imply that she "could have reasonably expected that traffic would continue unimpeded under the circumstances" (*Baez-Pena v MM Truck and Body Repair, Inc.*, 151 AD3d 473, 477 [1st Dept 2017] [internal quotation marks and citations omitted]).

And yet, there is a well-established body of case law from the Appellate Division, First Department that the sudden stop of the lead vehicle proceeding through an intersection does not establish a non-negligent explanation for a rear-end collision (*see e.g. Vasquez v Chimborazo*, 155 AD3d 432, 433 [1st Dept 2017]; *Morgan v Browner*, 138 AD3d 560, 560-61 [1st Dept 2016]; *Chowdhury v Matos*, 118 AD3d 488 [1st Dept 2014]; *Johnson v Phillips*, 261 AD2d 269, 271 [1st Dept 1999] [sudden stop in stop-and-go traffic]; *Malone v Morillo*, 6 AD3d 324, 325 [1st Dept 2004] [sudden stop in the

---

judgment (*see Claypool v City of New York*, 267 AD2d 33, 35 [1st Dept 1999]). To the extent that defendants meant to argue that there was no jurat accompanying the plaintiff's signature on the hearing transcript, the hearing transcript can be used without the plaintiff's signature because it was certified as accurate by the stenographer (*see Garris v City of New York*, 65 AD3d 953, 953 [1st Dept 2009]).

**450521/2022   MELENDEZ, JASON L. vs. NEW YORK CITY TRANSIT AUTHORITY ET AL**          **Page 2 of 5**
**Motion No.  001**

[* 2]                                                                          2 of 5

middle of the intersection while the light was yellow or red]). "[A] 'claim by the rear driver that the lead vehicle made a sudden stop, standing alone, is insufficient to rebut the presumption of negligence" (*Ahmad v Behal*, 221 AD3d 558, 559 [1st Dept 2023]).

*Baez-Pena* did not overrule these cases. And yet, *Baez-Pena* creates a tension with those cases because the claim that the lead vehicle suddenly stopped implies that it was reasonably expected that traffic would continue unimpeded under the circumstances. Otherwise, such a stop would not be characterized as "sudden."

*Perez v City of New York* (231 AD3d 633, 634 [1st Dept 2024]), which was decided after *Baez*, is instructive. There, the defendants' vehicle collided with the rear of the plaintiff's vehicle as the plaintiff was attempting to make a right turn. Supreme Court denied the plaintiff's motion for summary judgment on liability, but the Appellate Division, First Department reversed the court below. The Appellate Division reasoned that defendants failed to provide a nonnegligent explanation because defendants failed to demonstrate that the defendant driver had maintained a safe following distance, or that he could have "'reasonably expected that traffic would continue unimpeded' under the circumstances" (*id.* at 634).

Meanwhile, *Baez-Pena* involved facts markedly different from those alleged here. There, the plaintiff "conceded that he was traveling 35 miles per hour and was two car lengths behind defendants' box truck for about three minutes before the accident, but could not stop his vehicle in time after he saw [the defendant's] truck strike the overpass" (151 AD3d at 476). Thus, in *Baez-Pena*, the plaintiff "could have reasonably expected that traffic would continue unimpeded, since traffic was flowing smoothly and he had no reason to foresee that [the defendant's] truck would not clear the overpass" (*id.* at 477 [internal quotation marks and emendation omitted]).

To reconcile *Perez* and *Baez-Pena*, it this court's view that the presumption of negligence can only be rebutted when the driver of the offending vehicle submits evidence that (1) traffic was reasonably expected to continue unimpeded when the lead vehicle suddenly stopped in Manhattan traffic; *and* (2) the driver also submits evidence that they maintained a safe distance from the lead vehicle.

Otherwise, allowing the presumption of negligence to be rebutted solely on evidence that traffic was reasonably expected to continue unimpeded would excuse the driver of the offending vehicle from having to maintain any safe distance from the lead vehicle at all, which would be contrary to precedent in this judicial department (*see Morales v Consol. Bus Tr., Inc.*, 167 AD3d 457, 458 [1st Dept 2018] [driver's excuse that the bus made a sudden stop, mid-block, is insufficient to rebut the presumption of negligence). "[S]tops that are foreseeable under prevailing traffic conditions must be anticipated by the driver who follows, who is under a duty to maintain a safe distance between his vehicle and the lead vehicle" (*Lambert v Bonilla*, 201 AD3d 502, 503 [1st Dept 2022]). Additionally, a claim that the lead vehicle made "a sudden stop" would be insufficient to overcome the presumption of negligence without any evidence about why

450521/2022   MELENDEZ, JASON L. vs. NEW YORK CITY TRANSIT AUTHORITY ET AL        Page 3 of 5
Motion No.  001

3 of 5

traffic was reasonably expected to continue unimpeded (*see also Animah v Agyei,* 63 Misc 3d 783, 790 [Sup Ct, Bronx County 2019]).

The facts of this case are very similar to *Corrigan v Porter Cab Corp.* (101 AD3d 471, 472 [1st Dept 2012]). There, the driver of the offending vehicle asserted that "the light was green when he struck defendants-appellants vehicle" and that the traffic was "medium" when defendants-appellants' vehicle stopped suddenly (*id.* at 472). The Appellate Division, First Department ruled that the driver of the offending vehicle did not provide a nonnegligent explanation for the collision because "[h]e did not explain why he did not maintain a safe distance between his vehicle and defendants-appellants' vehicle," which was only approximately two feet away (*id.*).

Here, like the driver of the offending vehicle in *Corrigan*, Winfield also stated that she was in "medium traffic" and that the light was green (Winfield affidavit ¶¶ 5, 12, 14). However, unlike that driver, Winfield's assertion that she maintained a "safe following distance" is conclusory. Notably, Winfield has neither stated the speed of her bus right before the accident, nor stated the "distance from plaintiff's vehicle when it braked or stopped moving" (*Stolyar v City of New York*, 233 AD3d 596, 598 [1st Dept 2024]; *see also Chame v Kronen*, 150 AD3d 622 [1st Dept 2017]).

Additionally, a stop at an intersection when the traffic signal is green is reasonably foreseeable for mid-morning weekday traffic in Manhattan.

"The expectation of a driver operating a motor vehicle on a highway with normal conditions — that traffic will continue unimpeded — is not shared by one operating a motor vehicle on a local public municipal roadway, particularly within the City of New York. The operator of a motor vehicle traveling on a local public roadway within the City of New York must anticipate a variety of events, including a sudden stop by a vehicle in front of the operator's vehicle. Put simply, sudden stops on local public roadways within the City of New York are imm[i]nently foreseeable, and the operator of a vehicle travelling on such a roadway should therefore expect that the flow of traffic will be interrupted" (*Animah,* 63 Misc 3d at 790 [Sup Ct, Bronx County 2019]).

Thus, Winfield fails to raise a triable issue of fact warranting denial of summary judgment, and plaintiff's is granted summary judgment in his favor as to liability against Winfield.

Contrary to defendants' arguments, plaintiff's motion for summary judgment is not premature, as any explanation for why Winfield rearended plaintiff's vehicle was already present within Winfield's own personal knowledge (*see Stephenson v New York City Tr. Auth.*, 226 AD3d 546 [1st Dept 2024]; *Ahmad v Behal*, 221 AD3d 558, 559 [1st Dept 2023]). "The mere hope that additional discovery may lead to sufficient evidence to defeat a summary judgment motion is insufficient to deny such a motion" (*Singh v New York City Hous. Auth.*, 177 AD3d 475, 476 [1st Dept 2019]).

450521/2022   MELENDEZ, JASON L. vs. NEW YORK CITY TRANSIT AUTHORITY ET AL
Motion No.  001

Page 4 of 5

[* 4]

As the NYCTA is the admitted owner of the vehicle operated by Winfield with the NYCTA's permission, plaintiff met his prima facie burden that the NYCTA is vicariously liable for Winfield's negligence under Vehicle and Traffic Law § 388 (*see Murdza v Zimmerman*, 99 NY2d 375, 379 [2003]).

Plaintiff is also entitled to summary judgment dismissing defendants' first affirmative defense of plaintiff's culpable conduct, because defendants failed to overcome the presumption that the driver of the lead vehicle in a rear-end collision is not negligent (*Ly Giap v Hathi Son Pham*, 159 AD3d 484, 485 [1st Dept 2018] ["A claim that the lead driver came to a sudden stop, standing alone, is insufficient to rebut the presumption that the rearmost driver was negligent and the stopped vehicle was not negligent"]).

Because Winfield did not state the speed of her vehicle nor the distance from plaintiff's vehicle, defendants failed to raise a triable issue of fact warranting denial of summary judgment dismissing defendants' third affirmative defense of emergency (*see Scioli v Joseph*, 203 AD3d 680 [1st Dept 2022] [stating that the defendant's "affidavit does not set forth how fast his vehicle was traveling before the accident or why his reaction to the alleged emergency was reasonable under the circumstances"]; *Johnson*, 261 AD2d at 271 [1st Dept 1999] ["the emergency doctrine typically is inapplicable to routine rear-end traffic accidents"]).

To be clear, the determination of defendants' fault as a matter of law on this motion does not include the issue of whether plaintiff suffered a serious injury within the meaning of Insurance Law § 5102 (d), "which is a threshold matter separate from the issue of fault" (*Reid v Brown*, 308 AD2d 331, 332 [1st Dept 2003]).

This constitutes the decision and order of the court.

20250325174310RTSAIE7EDDBF64DA04E1B9A8E6A19CF8575A3

| 3/25/2025 | | | | |
|---|---|---|---|---|
| **DATE** | | | **RICHARD TSAI, J.S.C.** | |

| CHECK ONE: | | CASE DISPOSED | X | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|
| | X | GRANTED | | DENIED | | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | | REFERENCE |